Staples, J.,
delivered the opinion of the court.
The appellee, White, purchased the land in controversy under a decree of the county court of Russell. He complied with the terms of sale by making the cash payment and executing his bonds for the deferred instal *539 ments, and there is every reason to believe ,he would have paid them'off at maturity but for the obstacles interposed by third persons. The sale was reported to the court by the commissioner, and was regularly confirmed without objection. The question now arises, whether there was any such irregularity in the sale or in the proceedings of the commissioner, or in the conduct of the parties, as to warrant this court in setting aside the sale and vacating the title of the purchaser.' In the first place, it is insisted that the land was sold at a very inadequate price; and that .the commissioner, in violation of the terms of the decree, made sale of the whole tract, when the sale of part only was necessary to satisfy the judgment creditor.
There is not in this record, nor in the record of the proceedings of the district court of the United States, any evidence tending to sustain either of. these allegations. The upset bid made in the latter court by Duff', the debtor, is not evidence of the value of the land, because, as was said by counsel, Duff being entitled to the surplus proceeds after the payment of all his debts, and these debts being greatly less than two thousand dollars, the amount of the appellee’s purchase, he might well afford to bid twice the value of the land. The district court of the United States in setting aside the sale made to the appellee, did not base its decree upon either of the grounds now suggested. The evidence shows that the land was assessed in 1872, the year in which the sale was made, at nine hundred and seventy dollars.; Duff', himself, in his deed of homestead filed in 1873, estimates it at eleven hundred and sixty’dollars.
In the face of these facts, without a scintilla of proof to the contrary, it is impossible, with any show of reason, to say that two thousand dollars was an inadequate price. The presumption is precisely the reverse. The decree directed the commissioner to sell the land in the bill and *540 proceedings mentioned, or so much thereof as was necessary, to discharge the plaintiff’s debt. € The commissioner sold the whole ninety-seven acres. It may be that’ a sale of part would have been sufficient, and could have been made without detriment to any one. This depended upon the nature, quality and condition of the property. It maybe that the land was not susceptible of partition, and that its chief value consisted of buildings and other appurtenances which could not be conveniently sold in parcels. Upon these points the record furnishes no information, and we are now dealing with the rights of a bona fide purchaser, after a confirmation of the sale without objection, and after the lapse of more than three years before-the bill of review was filed. The district court of the United States, when it undertook to set aside the sale made to the appellee under the decree of the county court of Russell, at the instance of Duff’ himself, certainly with his consent, entered a decree for the sale of the entire tract. Surely the county court could do substantially the ¡same thing, by confirming a sale at an adequate price, made in the interests of all the creditors.
"When the decree of the district court just alluded tow7as reversed by the circuit court of the United States at Lynchburg, upon the ground that the whole matter properly belonged to the state court, which alone had jurisdiction, the circuit court made the following provision in its decree of reversal: “The district court is. advised to direct the assignee of said Duff to take such proper proceedings in the circuit court of Russell county as may be necessary to secure the .surplus of the proceeds of sale of said lands for the benefit of the bankrupt’s estate, if any there be.” It is very true the same decree contains a reservation of the right to Duff', the bankrupt, also to institute in the state court any proceedings he may deem necessary to the protection of his interests. He, however, has instituted no proceedings *541 of any kind; he is not a party in this record except as a defendant in the original suit. The appellant, the assignee in bankruptcy, in filing this bill to set aside the sale, seems therefore to have gone beyond the instructions given him in the bankrupt court. His duty was not to ask for a vacation of the sale, but to secure the surplus of the proceeds for the benefit of the bankrupt’s estate. It is worthy of observation that in his bill of review he neither avers that the land was sold for an inadequate price, nor that the commissioner had violated his duty in selling the whole tract instead of a part. If the purpose was to impeach the sale on these grounds, the matter ought to have been put in issue by proper averments in the bill, and thus afford the appellee an opportunity of meeting the points by his answer and his proofs. Under all these circumstances the proposition cannot for a moment be entertained to set aside the sale to the appellee upon the ground of inadequacy of price, of irregularity in the sale, or in the conduct of the commissioner who made it.
The ground mainly- relied on in the bill of review for vacating the sale, is that upon Duff’s becoming a bankrupt the suit of Cecil, the creditor, abated, and no further proceedings could be lawfully had therein affecting his rights or the rights of his creditors, until the suit was properly revived against the assignee in bankruptcy. How it will be seen that the bill does not charge that 'White, the purchaser, either at the time of the sale or of its confirmation, had any notice of the bankruptcy. He is not charged with fraud or improper conduct in any respect, and there is no reason for attributing to him anything of the kind. The decree for the sale was rendered before the adjudication in bankruptcy, and the sale was made before the assignee was appointed. Ho suggestion of the bankruptcy was made on the record, nor was the matter brought in any manner to the atten *542 tion of the court, although there was ample time to do so before the sale was confirmed. If the assignee failed in his duty in this particular the purchaser cannot be affected by his neglect or misconduct in the absence of all proof showing that injustice was done. The mere fact of the bankruptcy of the debtor could not of itself prevent the sale or its confirmation. It might render proper the introduction of a new party on the record, when properly suggested to the court, but it could not prevent or in any manner interfere with the execution of a valid decree. Upon this point the case of Eyster v. Graff et als., decided by the supreme court of the United States (1 Otto, U. S. R. 521) is a direct authority. In that case, Mr. Justice Miller, delivering the opinion of the court, said: “At the time the suit was commenced the mortgagor, McClure, was vested with the title, and was the proper and necessary defendant. Eut for the bankruptcy of McClure there can be no doubt that the sale under the foreclosure decree and the deed of the master would have vested the title in the purchased', and that this would have related back to the date of the -mortgage. Nor can there be any question that the suit having been commenced against McClure when the title or equity of redemption was in him, any person who bought of him or took his title or any interest he had, pending the suit, would have been bound by the proceedings and their rights foreclosed by the decree and sale. These are elementary principles. Is there anything in the bankrupt law, or in the nature of proceedings in bankruptcy, which takes the interest in the mortgaged property acquired by the assignee out of this rule ? ”
The learned judge then proceeds to show there is not, and that no reason existed why the same principle should not apply to the transfer made by a bankruptcy proceeding. He lays down the proposition that where an assignee in bankruptcy is appointed during the pendency of pro *543 ceedings in a state court for the sale of mortgaged property, he stands as any other purchaser would stand on whom the title had fallen alter the commencement of the suit, a purchaser pendente Ute, and if there be any reason for interposing, the assignee should have himself substituted for the bankrupt, or be made a defendant on petition. But if he fail to do so, it does not invalidate the proceedings. And further, that a state court cannot take judicial notice of the proceedings in bankruptcy, and it is its duty to proceed as between the parties before it, until by some proper pleadings in the case it is informed of the changed relations of the parties to the subject matter. These citations are given because they are directly in point, and because they are conclusive of the question, if the decisions of the supreme court of the United States are authority in such cases.
In the present case, if the assignee did not choose to object to the sale, there was nothing to prevent the debtor himself from doing so. He was interested in the question of homestead, and he was interested in the surplus remaining after the claims of creditors .were satisfied. He had the right, notwithstanding his bankruptcy, to go forward and object to the confirmation of the sale, or to suggest his bankruptcy, and require his assignee to be brought before the court and to take care of his interests. Instead of this, he filed his petition in the United States court some eight or ten months after the sale was confirmed, with a view to oust the jurisdiction of the state court, to set aside the sale and to have his entire estate set apart as a homestead. This petition was dismissed, and he was again remitted to his remedies in the state courts. But instead of pursuing them, after the lapse of nearly two years, he again applies to the United States courts to interpose in his behalf. He at last succeeds in July, 1875, in obtaining a decree vacating the sale *544 made to the appellee, not upon any of the grounds now suggested, but because, in the opinion of the district judge, it did not appear the rents and profits of the land would not pay off the judgment lien within five years, and because there was no return of nulla bona upon the execution before the land was decreed to be sold. This decree practically assumed for the district court of the United States appellate jurisdiction to revise the proceedings and decrees of a state court. As already stated, it was afterwards reversed hy the circuit court of the United States. And now, after all this delay, contention and expense, the state courts are asked to set aside a sale made in 1872, and regularly confirmed in February, 1873, without a particle of evidence impeaching its fairness, or the good faith of the purchaser.
It must not be forgotten that while a purchaser at a judicial sale acquires by his bid and its acceptance no independent right to have his purchase completed, but is merely a preferred proposer until confirmation, after confh’mation by the court, his condition is very materially changed. His contract is then executed, and he is regarded as a complete purchaser, with all the rights incident to that position. Against him the courts are never disposed to interfere, unless for very grave and substantial errors in the decrees and proceedings upon which his title, is founded. See Zirkle v. Mc Cue, 26 Gratt. 517, and cases there cited.
With respect to the objection that no decree for a sale of the land ought to have been entered without an enquiry to ascertain whether the rents and profits would pay off the debt within five years, it is sufficient to say that the bill contains a direct averment that the rents and profits are not sufficient for that purpose.
Ho answer being filed by the defendant, the bill was taken for confessed, and a decree for the sale entered *545 before the adjudication in bankruptcy. And even now the record contains no evidence upon the subject, nor is the matter put in issue by the pleadings. Even though it appeared that the county court of Russell plainly erred upon this point, this court would not for that cause now set aside a sale fairly made for an adequate price, when it is manifest a sale is rendered necessary by the bankruptcy of the debtor, and when this court, if it should set aside the sale already made, would be compelled immediately to order a resale in the interest of all parties concerned.
One other objection remains' to be considered, which might more properly have been noticed in the beginning, and that is, that the county court of Russell was not authorized to decree a sale of the land until it appeared that the debtor had no personal estate upon which an execution could be levied. It appears that an execution was issued and levied upon certain effects of the debtor which were claimed by him under a homestead exemption. The creditor was under no obligation to contest this claim. Tie might, if he pleased, acquiesce in it and apply at once to a court of equity to enforce the lien of his judgment. It does not lie in the mouth of the debtor now to assert that his claim was unfounded; that the'creditor ought to have disregarded it and insisted upon a sale of the property under the execution. This is a sufficient answer to the objection that the land was not liable. Another is found in the circumstances already mentioned, that the sale was made under a fro confesso decree, confirmed without exception, and' no objection ever made until the bill of review was filed in this case.
But even though no execution had ever issued, the court had power to decree a sale under the statute. Upon this point it is only necessary to refer to the opinion of *546 this court delivered by Judge Burks, in the case of Price v. Thrash, supra, p. 521. 1
Upon the whole, there is no error in the decree of the circuit court, and the same must be affirmed.
Decree affirmed.